C. Wesley COLLINS, Appellant,

v.

**Honorable Sara COMBS, Chief Judge, Kentucky Court of Appeals, Appellee.**

No. 2010–SC–000151–OA.

Supreme Court of Kentucky.

Aug. 26, 2010.

C. Wesley Collins, Winchester, KY, pro se.

Chief Judge Sara Walter Combs, Ann Price Swain, Chief Staff Attorney, Kentucky Court of Appeals, Frankfort, KY, Counsel for Appellee.

## MEMORANDUM OPINION OF THE COURT

Petitioner, C. Wesley Collins, filed this action in March 2010, seeking relief from a Court of Appeals Order signed by Respondent, Sara W. Combs, the former Chief Judge of the Kentucky Court of Appeals. The Order prohibits Collins from physically "entering the Central Office of the Court of Appeals or any of the Court of Appeals Field Offices until such time as this order may be rescinded by a subsequent order of this Court." The Order further states that the Court will accommodate Collins's need to conduct legitimate business. To facilitate Collins's transactions with the Court, the Order instructs the Clerk of the Court of Appeals to accept pleadings from Collins by mail, fax, or e-mail.

Collins filed the instant action in this Court, arguing that Respondent lacked jurisdiction or authority to enter the Order and that the Order, itself, was arbitrary and irrational. Collins seeks a declaration that Chief Judge Combs was without jurisdiction and authority to enter the Order; a declaration that the prohibition of Collins's entry into the Court of Appeals Offices is arbitrary, irrational and unenforceable; a permanent injunction preventing enforcement of the Order and a writ of mandamus compelling Respondent to rescind the Order. Chief Judge Combs filed a response, which Collins moved to strike. This Court passed the motion to the merits of this action and Collins filed a motion to reconsider. We deny the motion to reconsider as moot, and for the reasons stated hereinafter, we decline to strike the response.

Because Respondent possesses inherent authority to place reasonable restrictions upon the manner in which litigants may access the courts, particularly when safety concerns are implicated, and because the facts giving rise to Respondent's safety concerns in this case are well documented, we reject Collins's claim for relief. Although the Court of Justice recognizes a duty to accommodate litigants and strives to do so, it is also incumbent upon the Court of Justice to respond promptly to situations that create concern for the safety of court personnel. As such, the courts are vested with inherent authority to employ reasonable means to address safety concerns. Although such authority should be employed sparingly, the instant case presents the rare situation where that authority was appropriately exercised. As Collins's requested remedies of declaratory relief, injunctive relief and mandamus

are interdependent, our resolution of the substantive authority issue in Respondent's favor precludes all of Collins's requested relief.

## RELEVANT FACTS

On November 5, 2007, Respondent entered the following Order:

IN RE C. WESLEY COLLINS

*ORDER CONCERNING FILINGS*

Having considered Mr. Collins's pattern of improper *ex parte* contacts with Judges of this Court, his history of harassing communications both in this Court and in the Supreme Court of Kentucky, and his recent arrest while in the possession of numerous firearms, the Court has concluded that Mr. Collins represents a substantial threat to the safety of all personnel of the Court of Appeals. Accordingly, the Court ORDERS that from and after the date of entry of this order, Mr. Collins SHALL BE PROHIBITED from entering the Central Office of the Court of Appeals or any of the Court of Appeals Field Offices until such time as this order may be rescinded by a subsequent order of this Court.

This Court will accommodate Mr. Collins's need to conduct legitimate business. During this period of prohibition, the Clerk of this Court is DIRECTED to ACCEPT pleadings from Mr. Collins by mail, fax, or e-mail for filing in accordance with the rules of appellate procedure.

ENTERED: 11/05/07 /s Sara Combs
Chief Judge,
Court of Appeals

Collins instituted the instant action, seeking to prohibit enforcement of the Order. In response, Chief Judge Combs refers this Court to prior opinions of the Court of Appeals and to an opinion of the United States District Court for the Eastern District of Kentucky, as well as to the recusal order entered by a certain judge, all of which document Collins's disrespectful, harassing and otherwise inappropriate pattern of behavior concerning judges and court personnel referred to in the Order.

Collins's interactions with the Court of Justice began when controversies arose between Collins and his former spouse, Peggy Rice, particularly concerning the couple's time-sharing agreement with respect to their son. When Rice filed a contempt action against Collins, alleging Collins's violation of the time-sharing order entered by Fayette Family Court and expressing concern for their son's safety in light of Collins's "bizarre actions," the Fayette Family Court ordered Collins to a domestic violence assessment by Comprehensive Care of Lexington. The court suspended Collins's time-sharing privileges until the assessment was completed. As a result of the assessment, Comprehensive Care recommended that Collins attend its Domestic Violence Treatment Program and undergo a psychiatric evaluation. However, Collins was soon discharged from the treatment program for his failure to follow through with treatment recommendations and he did not comply with the order to undergo a psychiatric evaluation. In its opinion addressing Collins's appeals of several of the family court's post-decree orders, the Court of Appeals explained that the several domestic violence orders and emergency protective orders present in that record were sufficient to sustain the family court's order suspending Collins's visitation with his son pending his submission to a psychiatric evaluation. *Collins v. Collins,* 2006 WL 3371891 (Ky. App.2006) (unpublished).

In that same decision, the Court of Appeals detailed Collins's behavior in the Court of Justice as follows:

Wes embarked upon a course of conduct which the trial court ultimately deemed to be vexatious and harassing, by filing a series of motions, affidavits, petitions for injunctive relief, complaints and writs seeking to bar enforcement of the trial judge's order, to restore visitation with his son, to change custody and to obtain an award of maintenance. Although the trial judge refused to consider any of Wes's pleadings until he complied with the order to undergo a psychiatric evaluation, the barrage of filings continued and even increased. The magnitude of Wes's filings in the family court, this Court and the Supreme Court was such that Peggy reached the point that she could no longer afford to pay her counsel to respond to them. Counsel was permitted to withdraw without filing a brief in these appeals.

As was the case with his unsuccessful attempt to obtain relief by writ in the Supreme Court of Kentucky, Wes's assertions in these appeals consist only of vague and unsupported allegations that the trial judge and attorneys engaged in fraud, conspiracy and misconduct all calculated to deprive him of an alleged "vested liberty interest" as a parent to his minor child.

*Id.* at pp. 1–2.

Further, a recent Court of Appeals opinion addressed the dismissal of claims brought by Collins against the trial judge, his former spouse's attorney, the former Chief Justice of this Court, two assistant county attorneys, the Kentucky Bar Association and the Judicial Conduct Commission. *Collins v. Brown,* 2010 WL 686174 (Ky.App.2010) (unpublished). Collins's complaint in that case alleged that the defendants were part of a wide-ranging "Mixed War conspiracy" against him. In affirming the dismissal, the Court of Ap-

peals reiterated Collins's actions as set out in its previous opinion and added:

After our [previous] opinion was rendered, but before the Supreme Court had denied discretionary review, Wes filed the instant complaint. Therein, Wes again contended the trial judge, two assistant county attorneys, and his ex-wife's attorney committed misdeeds against him during the divorce action. Like his prior filings, the complaint contained numerous vague and unsupported allegations of a grand conspiracy involving fraud and misconduct calculated to harm him and improperly benefit his ex-spouse. He also alleged bad acts against the Chief Justice of the Supreme Court of Kentucky, the KBA, and the JCC, apparently under some theory of vicarious liability, complicity, or negligent supervision, although it is difficult, if not impossible, to ascertain from the complaint the basis or applicability of any such theory. Most, if not all, of the issues raised in the civil complaint had been previously asserted in earlier litigation.

*Id.* at p. 2 (footnotes omitted).

In the midst of Collins's baseless and often irrational claims before the Kentucky Court of Justice, Collins also filed suit in federal court against then-Chief Justice of the Kentucky Supreme Court, Joseph E. Lambert. *Collins v. Lambert,* 2007 WL 293876 (E.D.Ky.2007) (unpublished). In dismissing this action, the United States District Court for the Eastern District of Kentucky reiterated the facts set out in the Kentucky Court of Appeals opinion. The federal court quoted Collins's most concise allegation against Chief Justice Lambert as follows:

He has turned a blind eye to the Plaintiffs contentions and evidence in support of his claims. Apparently he is setting the example of the policy of bad

faith conduct under color of law, showing to be wantonly tolerant of it, and thus far remaining silent and nonfeasant.

*Id.* at p. 2. The federal court noted that Collins's apparent support for his allegation consisted merely of copies of one-sentence orders entered by the Chief Justice denying Collins's claims for injunctive relief.

In her response before this Court, Chief Judge Combs explains that all three opinions demonstrate Collins's baseless and irrational perception that the judicial system is engaged in an ongoing conspiracy to injure him. Chief Judge Combs also refers this Court to Collins's repeated improper *ex parte* contacts with judges, the most egregious of which is well documented in a judge's recusal order, which stated:

> The appellant [Collins] has been instructed several times that attempts to contact the judge are improper and that any material to be submitted to the Court must be filed in the office of the clerk. In spite of repeated warnings, the appellant has continued to contact the presiding judge by e-mail, by fax, and by telephone. The appellant has also made contact with members of the judge's family and has caused a "pleading" to be inserted into the newspaper delivered to the judge's home.

It was the culmination of all of these events, along with Collins's recent arrest for violating 18 U.S.C. § 922(g)(1) (possession of firearm by a convicted felon), that led to the entry of the Order prohibiting Collins from physically entering the Court of Appeals Offices.

Collins alleges that Chief Judge Combs was without jurisdiction or authority to enter the Order and that the Order is arbitrary, irrational, and unenforceable. We address each argument in turn.

## *ANALYSIS*

### I. Standard of Review

Collins seeks declaratory, injunctive and mandamus relief in this Court. Regardless of the characterization of the type of relief sought, Collins's request, fundamentally, is that this Court compels Respondent to rescind the subject Order and/or prohibit Respondent from enforcing the Order. Ordinarily, original proceedings are not appropriate in this Court except in very limited circumstances. However, because of the unique nature of the Order that Collins challenges, we agree that Collins is entitled to invoke the original jurisdiction of this Court to seek a writ, whether it be characterized as a writ of mandamus or a writ of prohibition. In *Russell County, Kentucky Hosp. Dist. Health Facilities Corp. v. Ephraim McDowell Health, Inc.*, 152 S.W.3d 230 (Ky. 2004), this Court explained that original writ proceedings are available in the Supreme Court to challenge an interlocutory order of the Court of Appeals.

Nevertheless, writs of mandamus or prohibition are extraordinary remedies and are appropriately considered only where the lower court is acting beyond its jurisdiction or where the lower court is acting erroneously, although within its jurisdiction, but no adequate remedy by appeal or otherwise exists and failure to grant the writ will result in great and irreparable injury. *Kentucky Farm Bureau Mut. Ins. Co. v. Wright*, 136 S.W.3d 455 (Ky.2004). In this instance, Collins explicitly claims entitlement to relief on the first ground, *i.e.*, that Respondent was without jurisdiction to enter the order. Furthermore, we construe Collins's additional challenge of the order as "arbitrary, irrational, and unenforceable," as implicating the second ground as well, and therefore address each contention in turn.

## II. Chief Judge Combs Was Not Without Jurisdiction or Authority to Issue the Order Prohibiting Collins From Physically Entering the Court of Appeals Offices

Collins asserts that Chief Judge Combs usurped this Court's exclusive authority over the administration of the Court of Justice. He also argues that Chief Judge Combs was without jurisdiction to enter the subject Order because it was not associated with a particular case and, therefore, cannot be said to be an order aiding in the Court's appellate jurisdiction.

■ Concerning his assertion that Chief Judge Combs usurped this Court's authority, Collins correctly points out that SCR 1.010 states, "The policymaking and administrative authority of the Court of Justice is vested in the Supreme Court and the Chief Justice." Further, SCR 1.030(6)(b) provides, "In addition to the powers and duties imposed by these rules, the chief judge [of the Court of Appeals] shall have such other powers and duties as the Supreme Court by rule or special order shall direct." However, Collins overlooks decisional law that confirms the inherent authority of *any* court to manage its affairs and to assist the administration of justice. Specifically, "it has generally been recognized that courts (even without express authority given by the constitution, statute, or rule of a supreme court of a state) have inherent power to prescribe rules to regulate their proceedings and to facilitate the administration of justice." *Wright,* 136 S.W.3d at 459 (*quoting Craft v. Commonwealth,* 343 S.W.2d 150, 151 (Ky.1961)).

For example, in *Craft,* our predecessor Court addressed whether Jessamine Circuit Court had the authority to adopt a particular rule of practice in its court. In validating the court's authority, the Court quoted *Warfield Natural Gas Co. v. Allen,* 236 Ky. 358, 33 S.W.2d 34 (1930), as follows:

To accomplish the above ends, and as an aid in the orderly dispatch of litigation, courts are vested with the right to adopt and promulgate reasonable rules for the guidance of litigants and their counsel and which they are as much under duty to observe as if the rules had been created by statutory enactment in the form of a Code of Practice. Such right of adoption and promulgation inheres to an appellate court the same as it does to a trial court.

*Craft,* 343 S.W.2d at 151.

■ While *Craft* involved a particular court's authority to promulgate rules of practice binding on all litigants and attorneys appearing before it, *Wright* involved a trial court's authority to enter an order that was specific to the parties in a certain case. Although no Kentucky decision appears to have addressed an order similar in nature to the Order entered here, the foregoing cases confirm a court's inherent authority to do so, provided that the order is substantively reasonable.

■ As to Collins's claim that Respondent was without jurisdiction to enter the Order because it was not associated with a particular case, a similar argument was rejected by the United States Court of Appeals for the Seventh Circuit. In *In re Chapman,* 328 F.3d 903 (7th Cir.2003), an executive committee of the U.S. District Court entered an order imposing restrictions on Chapman's filings of civil suits in the district court. The order was entered in response to Chapman's prolific and often frivolous filings in the district court. In substance, the order was a regulatory injunction that subjected all of Chapman's future pleadings to a screening process prior to forwarding to the clerk for filing. Answering Chapman's jurisdictional chal-

lenge based on the order's lack of association with any particular case, the Seventh Circuit Court of Appeals stated:

> Indeed, the Committee's action, rather than being a new civil lawsuit commenced against Mr. Chapman, is nothing but an extension of one of his numerous civil suits (which subjected him to the personal jurisdiction of the court) and an exercise of the court Committee's inherent power to manage and control the litigation coming before the district court. The Executive Committee, like an individual district judge, has the power to enter judicial orders, such as injunctions. We hold that the Committee was acting within its power to impose filing restrictions against Mr. Chapman, and his challenge to the Committee's jurisdiction is without merit.

*Id.* at 905 (citations omitted). We agree with the sound reasoning utilized by the Seventh Circuit Court of Appeals. Accordingly, Collins's claim that Respondent did not have jurisdiction to enter the Order is without merit.

### III. The Order Prohibiting Collins From Physically Entering the Court of Appeals Offices Was Not Arbitrary or Irrational

■ Although we have established that Respondent had inherent authority to enter the Order, we must now address whether that authority was properly exercised in this case. Collins asserts that the Order is unenforceable because it is arbitrary and irrational. Because there is ample documentation in public records, as set out above, to support entry of the Order, we reject Collins's contention.

Several federal courts have approved of prospective substantive restrictions on a particular litigant's right to access the courts in the form of subjecting the liti-

gant's pleadings to a screening process, or even imposing a complete bar to future filings related to a particular case. *See e.g.*, *Chapman*, 328 F.3d 903 (subjecting future pleadings to screening process); *Stimac v. U.S. Dep't of Justice*, 917 F.2d 1306 (7th Cir.1990) (prohibiting further filings without court's permission); and *Sassower v. Abrams*, 833 F.Supp. 253 (S.D.N.Y.1993) (issuing injunction allowing other federal district courts to summarily dismiss lawsuits filed in, or removed to, federal court if such lawsuits involved the subject matters enumerated in the injunction).

The Order concerning Collins is even less restrictive because it does not impose substantive restrictions on his ability to file pleadings. And, in fact, the standard filing procedures have been relaxed such that Collins is permitted to submit filings via fax or e-mail. The only restriction imposed by the Order is a restriction on Collins's physical entry into the Court of Appeals Offices. A nearly identical restriction was upheld by a federal court in *In re Prewitt*, 280 F.Supp.2d 548 (N.D.Miss.2003), where Prewitt, an attorney, was banned from entering the court house. In imposing the restriction, the court stated:

> Prewitt has become adept at punishing those with whom he has a personal conflict by filing and pursuing frivolous lawsuits against them.

> \*   \*   \*   \*   \*   \*

> Prewitt has filed numerous frivolous and malicious actions in this and other courts, has made a nuisance of himself in the Greenville courthouse itself and has set forth in writing his belief that he is carrying on a holy war against several judicial officers of this court. As a sanction for these actions the court hereby bars Prewitt from entering the third floor of the federal courthouse in Green-

ville, Mississippi.... The fact that Prewitt poses a security risk favors a complete and permanent ban from the courthouse. However, the fact that Prewitt is an attorney would seem to require some relaxation of that requirement because he may, at some point, be required to attend a trial or hearing in federal court. Should Prewitt wish to file pleadings or other papers with this court, he must do so by U.S. Mail or private courier. Should Prewitt wish to conduct legal research, he must do so in some other location. The court may, however, for good cause shown, permit Prewitt to attend hearings for which his presence is required in one of the courthouses in this district. Should Prewitt's presence at the courthouse be so required, a United States Marshal shall escort him to and from the hearing and accompany him at all times when he is in the courthouse.

*Id.* at 551, 564. Significantly, the *Prewitt* Court also stated, "This court has a duty to the employees, litigants, attorneys and other rightful users of the Federal Courts in the Northern District of Mississippi to ensure their safety and to maintain appropriate decorum." *Id.* at 563.

Likewise, the Kentucky Court of Justice has a duty to ensure the safety of court personnel. In discharging that duty, Respondent entered the subject Order against Collins. Given Collins's history of improper contacts with the judiciary despite repeated warnings to refrain from such activities as well as Collins's seemingly irrational animus towards the judiciary, which is well documented in prior court opinions, Respondent appropriately exercised her authority in banning Collins from the Court of Appeals Offices. Further, Respondent tempered the effects of the ban by expanding the methods Collins may utilize for the submission of any future pleadings. Respondent notes that Collins

has taken advantage of these methods and has filed several pleadings since the date of the Order, demonstrating that Collins' ability to conduct legitimate business with the Court of Appeals has not been hampered by the Order.

Furthermore, we note that the subject Order is effective "until such time as [it] may be rescinded by a subsequent order of this Court." Significantly, Collins does not present us with a situation where his presence is warranted in the Court of Appeals for an oral argument, hearing, or other proceeding that a party-litigant is legally required or entitled to attend. Presumably, if such an instance arises where an order sets an oral argument or other hearing which Collins would be entitled to attend, appropriate arrangements would be made to allow Collins's physical attendance. Indeed, the Order, by its own terms, assures that "This Court will accommodate Mr. Collins's need to conduct legitimate business."

In sum, Collins has not demonstrated that Respondent acted erroneously in issuing the Order. Collins's failure in this regard is fatal to his claim for relief regardless of any professed irreparable injury or the availability of alternate adequate remedies. Therefore, we need not conduct a separate analysis of these two additional requirements for obtaining a writ.

## IV. Chief Judge Combs's Response is Proper for Our Consideration

Collins seeks to have Chief Judge Combs's response stricken. He first argues that Respondent erroneously characterizes his claim as a writ of prohibition when, in fact, it is an original proceeding. However, as outlined above, under these circumstances, a writ is an appropriate original action in this Court; thus, the two characterizations are not inconsistent.

Moreover, CR 76.36 explicitly permits the filing of a response to any petition for relief that is filed as an original action in an appellate court.

■ He next argues that this Court may not take judicial notice of the facts referenced in the response. However, the response simply cites to the Court of Appeals' own prior opinions, one federal court opinion, as well as to a recusal order, all of which are public records and appropriate subjects of judicial notice. KRE 201, enacted in 1990 provides in pertinent part:

(a) Scope of rule. This rule governs only judicial notice of adjudicative facts.

(b) Kinds of facts. A judicially noticed fact must be one not subject to reasonable dispute in that it is ... (2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The rule also provides that a court may take judicial notice *sua sponte*, at any time during the proceedings. KRE 201(c) and (f). We recognize that earlier decisional law limited judicial notice of court records to those in the same court, involving the same parties and issues, or records in the current proceeding. *See, e.g., Maynard v. Allen,* 276 Ky. 485, 124 S.W.2d 765 (1939); *Jones v. Bell,* 304 Ky. 827, 202 S.W.2d 641 (1947). However, KRE 201 expands the prior rule.

For example, in *Doe v. Golden & Walters, PLLC,* 173 S.W.3d 260 (Ky.App.2005), the Kentucky Court of Appeals took judicial notice of an opinion rendered by the U.S. Court of Appeals for the Sixth Circuit, involving the same parties and subject matter. The Court of Appeals stated, "[a]lthough not yet final, the fact of the Sixth Circuit's opinion in *Doe v. LFUCG*[, 407 F.3d 755 (6th Cir.2005) ] and its contents cannot reasonably be questioned. Moreover, this information is capable of ready determination as the opinion is avail-

able from the Sixth Circuit, the Federal Reporter, and Westlaw." *Id.* at 265–66 (footnotes omitted). Likewise, the opinions referenced in this matter are readily available from the Kentucky Court of Appeals or the U.S. District Court for the Eastern District of Kentucky and on Westlaw. Additionally, the recusal order referenced in this matter was entered in one of Collins's previous appeals in the Court of Appeals. Thus, these opinions and order, and their contents, are appropriate for this Court to judicially notice. *Thomas v. Judicial Conduct Commission,* 77 S.W.3d 578 (Ky.2002), is also instructive. In *Thomas,* this Court approved of the Judicial Conduct Commission's decision to take judicial notice of its own prior rulings concerning Thomas's disciplinary history in evaluating the appropriate sanction for the new charges against Thomas. As we have determined that the Court of Appeals Order concerning Collins is merely an extension of his previous, numerous appeals, *Thomas* lends support for this Court to judicially notice the referenced opinions and order.

■ Finally, Collins asserts that Chief Judge Combs's response should be stricken because it is signed by Ann Swain, the chief staff attorney for the Court of Appeals. Collins is correct that SCR 1.030(5) prohibits officers and employees of the Court of Appeals from practicing law. However, Collins misconstrues the role of officers and employees. As the Order being challenged was an order entered by Chief Judge Combs in her official capacity and on behalf of the Kentucky Court of Appeals, defending the Order is an appropriate function of an officer or employee of the Court of Appeals. Thus, Collins's contention is without merit.

## CONCLUSION

Because the evidence supporting entry of the Order was appropriate for judicial

notice by this Court, we decline to strike Chief Judge Combs's response. Collins's motion to reconsider this Court's previous order passing his motion to strike for consideration with the merits of this case is denied as moot. Furthermore, Chief Judge Combs had both jurisdiction and inherent authority to enter the subject Order, banning Collins from the Court of Appeals Offices, and she appropriately exercised that authority. Not only was the Order justified by legitimate safety concerns, it was tailored appropriately to ensure Collins's continued ability to conduct legitimate business with the Court of Appeals. Accordingly, Collins is not entitled to relief from this Court.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur. SCHRODER, J., not sitting.