RENDERED: APRIL 26, 2024; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1174-ME

NATHAN R. LANKFORD           APPELLANT

v.     APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE GINA KAY CALVERT, JUDGE
ACTION NO. 21-D-501421-004

JESSICA L. LANKFORD; AND E.L.,
A MINOR CHILD           APPELLEES

AND

NO. 2023-CA-1283-ME

NATHAN R. LANKFORD           APPELLANT

v.     APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE GINA KAY CALVERT, JUDGE
ACTION NO. 21-D-501421-003

JESSICA L. LANKFORD AND E.L., A
MINOR CHILD           APPELLEES

** ** ** ** **

BEFORE: CETRULO, JONES, AND KAREM, JUDGES.

JONES, JUDGE: The Appellant, Nathan Lankford, brings these appeals from the

Jefferson Circuit Court, Family Court Division ("family court") after it dissolved

the emergency protective order ("EPO") previously issued on behalf of the parties'

minor son, E.L., and dismissed Nathan's petition seeking issuance of a domestic

violence order ("DVO") to protect E.L. from the Appellee, Jessica Lankford.[1]

Nathan contends that the family court abused its discretion by relying on

extrajudicial statements from the Cabinet for Health and Family Services

("Cabinet") and dismissing his petition without a hearing after the Cabinet

informally advised the family court that it had not substantiated the allegations

regarding the child.

Having reviewed the record and being otherwise sufficiently advised

in the law, we hold the family court was required to conduct a hearing and base its

decision on evidence of record. The family court's stated practice of dismissing

DVO petitions regarding children whenever the Cabinet advises that it has elected

---

[1] Jessica failed to file an appellee's brief herein. This Court may impose penalties when a party does not file a brief under the Kentucky Rules of Appellate Procedure ("RAP") 31(H)(3); however, the decision whether to impose any penalties is within our discretion. *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). Considering the serious nature of domestic violence actions, we decline to exercise any penalties.

not to act on the allegations is contrary to the law and an abdication of the family court's decision-making duties.  For these reasons, we reverse the family court's dismissals.  The EPO shall be reinstated until such time as the family court has conducted an evidentiary hearing and made a final determination on whether to issue the requested DVO.

## I. BACKGROUND

Jessica and Nathan were married for approximately seven years during which time E.L. was born.  The family court entered an order dissolving the parties' marriage in November 2021.  Pursuant to the dissolution decree, the parties were awarded joint legal custody of E.L. and were to exercise equal timesharing with the child according to an agreed upon schedule, which was incorporated into the dissolution decree.[2]

According to Nathan, on July 13, 2023, E.L. returned from his timesharing with Jessica with bruising on his legs and face.  E.L. allegedly told Nathan that Jessica caused his injuries by kicking him down a flight of stairs and that she did so to punish him for getting into a fight at school.  In response to his

---

[2] Nathan alluded to the dissolution in his appellant brief, but the record of that action, No. 21-CI-501432, is not a part of this appeal.  We take limited judicial notice of the order of dissolution for the purpose of background information only.  *Collins v. Combs*, 320 S.W.3d 669, 678 (Ky. 2010).

son's disclosures, Nathan filed a petition for protection on E.L.'s behalf.  Therein,

Nathan averred as follows:

> My son indicated to me on July 13th approx. 8:30 pm that his mother kicked him down the stairs at her residence.
>
> [E.L.] has large bruises on both his left and right shin areas where he struck the steps.  He also has a bruise on his left eye where he struck the steps.  [E.L.] went on to say mommy was mad at him for getting into a fight at school. []
>
> [School] also noted the bruising and witnessed [E.L.]'s account of the abuse.  According to [official at the school], Jessica Agruso/Lankford was aggressively grabbing [E.L.] at pickup on the 12th as well as yelling at him.  [School official] has contacted [the Cabinet] based on what she has witnessed.
>
> Jessica has been clinically diagnosed with Borderline Personality Disorder (BPD).  This caused both violent physical outbursts and verbal outbursts.
>
> There is a past history of violence with Jessica. Notably an attempt to commit suicide on May 9th 2021.  In this incident she left a loaded 9 mm pistol on our bed in an unlocked bedroom while our then 4-year-old, [E.L.] was present.
>
> Jessica is both delusional and psychotic based on her Judge Calvert (Dist 9) Ordered Psychological exam filed 10/13/2022 in Circuit Court.
>
> I have and continue to <u>Fear</u> for my son [E.L.]'s <u>Safety</u>. [E.L.] is both neglected and abused at Jessica's residence. [The Cabinet] has been called before in the past in late 2021.

> Jessica has a history of alcohol problems along w/ a history of drug issues.
>
> In summation I ask that a restraining order be issued to Jessica Lynn Agruso to protect our son [E.L.] from further harm from his mother.

(Emphasis in original.)[3]

On July 14, 2023, the family court issued an EPO against Jessica on E.L.'s behalf and scheduled a DVO hearing for July 24, 2023. However, the hearing did not take place that day. Instead, the family court appointed a guardian *ad litem* ("GAL") for E.L. and continued the hearing. After several more continuances, the parties finally appeared before the family court on September 25, 2023, for an evidentiary hearing;[4] however, no evidentiary hearing was conducted. Instead, at the outset of the proceeding, the family court announced that it would be dismissing the petitions instead of conducting a hearing because it had received information that the Cabinet was not going to take any action pertaining to the allegations related to this family. The family court stated: "The Court has received information . . . that [the Cabinet] is not taking a petition. . . . When that happens, this Court dismisses petitions regarding children."

---

[3] Nathan also filed an identical petition on his own behalf.

[4] The EPO remained in place throughout this time.

No Cabinet representative appeared at the hearing and no evidence was formally entered. Rather, the family court engaged in informal, *ex parte* communications with the Cabinet prior to the date of the hearing. A printed email from the Cabinet dated August 25, 2023, appears in the record[5] and states:

> Judge Calvert wanted an update on our investigation for the Jessica and Nathan Lankford case. We are not sure who the clerk is and was wondering if you can send the following update for us. Please see below
>
> [The Cabinet] plans on closing the [Lankford] case. We started the investigation, and we did not find anything concerning. When speaking to the child his story was inconsistent. Child sibling also confirmed that he has never witnessed any physical violence between [Jessica] and the child. At this time, we will be setting up in-home services to assist the family with co-parenting. Please let me know if you need anything.

After noting its practice of dismissing petitions regarding children when the Cabinet elects not to proceed, the family court asked Nathan to confirm that he was alleging harm only to E.L. and not to himself. Nathan confirmed that he was not alleging any harm to his person. The family court then asked counsel whether there was any objection to the dismissal. Nathan objected on E.L.'s behalf. Notwithstanding Nathan's objection, the family court proceeded to dismiss the petitions and dissolved the EPO. The written order notes that the "[the

---

[5] We presume the family court judge directed the email to be included as part of the record. To be certain, it was never introduced through any witness as no formal testimony was taken.

Cabinet] did a full [investigation] including interviews & doesn't believe a [Petition] is appropriate." These appeals followed.

## II. ANALYSIS

The purpose of our domestic violence statutes is to provide victims with "short-term protection against further wrongful conduct in order that their lives may be as secure and as uninterrupted as possible" while also providing law enforcement officers with the means to protect victims. KRS[6] 403.715. The relevant statutes set out an orderly and expeditious procedure for DVOs.

Once a petition for an order of protection has been filed, the court shall immediately review it. KRS 403.730(1)(a). If the court determines that the petition sets forth the existence of "domestic violence and abuse" then the court "shall summons the parties to an evidentiary hearing[.]" *Id.* "If the review indicates that such a basis does not exist, the court may consider an amended petition or dismiss the petition without prejudice." *Id.* In this case, the family court properly concluded that the petition alleged conduct that, if true, would amount to domestic violence and abuse and summoned Jessica to an evidentiary hearing.

However, when the parties appeared at the evidentiary hearing, the family court elected not to move forward based on certain information it had

---

[6] Kentucky Revised Statutes.

obtained from the Cabinet prior to the hearing. Our statutes provide the lower court with the ability to conduct some *very limited* investigation prior to the evidentiary hearing. To wit, "(a) the court may obtain the respondent's Kentucky criminal and protective order history . . . to assess what relief and which sanctions may protect against danger to the petitioner or other person for whom protection is being sought, with the information so obtained being provided to the parties in accordance with the Rules of Civil Procedure; and (b) [i]f the petitioner or respondent is a minor, the court shall inquire whether the parties attend school in the same school system to assist the court in imposing conditions in the order that have the least disruption in the administration of education to the parties while providing appropriate protection to the petitioner." KRS 403.735(1). Notably, however, nowhere do our DVO statutes allow the lower court to engage in e*x parte* communications with the Cabinet about the underlying allegations for the purpose of determining whether to move forward with the hearing or dismiss the petition.

Having already determined that the petition set forth the existence of domestic violence and abuse, the family court was required to hold an evidentiary hearing and to base its final decision on the evidence adduced at the hearing. As we explained in *Wright v. Wright*, 181 S.W.3d 49, 53 (Ky. App. 2005),

> [B]ecause of the immense impact EPOs and DVOs have
> on individuals and family life, the court is mandated to
> provide a full hearing to each party. To do otherwise is a
> disservice to the law, the individuals before the court, and

-8-

the community the judges are entrusted to protect. While we realize the tremendous responsibility entrusted to the trial judges in these cases, we also realize the awesome impact each case has and, as such, must insist that a full evidentiary hearing be afforded to the parties as provided for by the statutes and court rules.

Furthermore, the process by which the lower court obtained the Cabinet's position on the case is not authorized by the DVO statutes, the Kentucky Rules of Civil Procedure, or the Kentucky Rules of Evidence. *Marchese v. Aebersold*, 530 S.W.3d 441, 448 (Ky. 2017) ("Absent a valid application of the rules for taking judicial notice, the use of the information acquired by the judge from an unidentified source is simply an inappropriate use of extrajudicial evidence to guide a ruling in a matter."). If Jessica, Nathan, or E.L.'s GAL wished to call a Cabinet representative to testify at the hearing, they were certainly able to do so. In that setting, the parties, not the court, would question the Cabinet whose testimony would be given under oath in open court pursuant to the Kentucky Rules of Evidence and subject to cross examination.

In *Rankin v. Criswell*, 277 S.W.3d 621, 625 (Ky. App. 2008), this Court vacated a DVO entered by the lower court based solely on the contents of the underlying petition and dependency, abuse, and neglect records that were "read silently by the court without admitting them as evidence and without informing the parties as to their contents." After holding that the lower court erred when it considered the files which were not evidence and to which the respondent had no

opportunity to examine or refute, we remanded the matter for a full evidentiary

hearing as follows:

> We are cognizant of the family court's onerous docket and the dilemma when the parties are unrepresented by counsel. However, because of the impact of a DVO on the family, the court must provide a full evidentiary hearing conducted in compliance with statutory and court rules.
>
> The hearing conducted in this case was woefully inadequate to meet the full evidentiary hearing required; therefore, we must remand the case for further proceedings. On remand, the court shall question the petitioner under oath as to the allegations in the petition and shall give [the respondent] the opportunity to respond. Because a DVO can be entered only after the court finds that there is an immediate and present danger of domestic violence, at a minimum, the statute requires the following: (a) specific evidence of the nature of the abuse; (b) evidence of the approximate date of the respondent's conduct; and (c) evidence of the circumstances under which the alleged abuse occurred. After conducting the evidentiary hearing, the court must then decide whether, under the preponderance of the evidence standard, domestic violence has occurred and may occur again.

*Id.* at 626.[7]

The family court accepted out-of-court, *ex parte* communications

from the Cabinet in lieu of conducting an evidentiary hearing as required by the

---

[7] It is true that *Rankin* was decided in the context of DVO petition that was granted, not one that was dismissed as occurred in this case. However, we cannot appreciate any difference, and we note that this Court, albeit in an unpublished decision, extended *Rankin* to dismissals. *Heaston v. Smith*, No. 2013-CA-000113-ME, 2013 WL 5522825, at *4 (Ky. App. Oct. 4, 2013). Although not bound by unpublished decisions, we may consider them as persuasive authority. RAP 41.

DVO statutes and appellate case law. It was a clear abuse of discretion for the family court to dismiss the petition based solely on the Cabinet's out-of-court statements and its decision not to act on the allegations contained in the petition. While the Cabinet no doubt has considerable expertise, it is not infallible, and the lower court is not bound to reach the same conclusions as the Cabinet. Having already determined that the petition alleged facts, which, if true, would amount to domestic violence or abuse, the family court was obligated to conduct an evidentiary hearing and to base its decision solely on the evidence presented therein.

### III. CONCLUSION

For the foregoing reasons, we reverse the family court's summary dismissals and remand this matter for a full evidentiary hearing and the issuance of findings of fact and conclusions of law based solely on evidence admitted as part of the hearing.[8] The EPO should be reinstated pending issuance of a final decision on the DVO petition.

ALL CONCUR.

---

[8] On remand, the parties are free to request the family court judge to recuse should they believe that her *ex parte* communications with the Cabinet would prevent her from being able to make an impartial decision. *Marchese*, 530 S.W.3d at 449 ("[W]e conclude that the trial judge's undertaking to obtain and use as evidence extrajudicial information relating to a party in the case caused her disqualification from proceeding further as the presiding judge in this matter.").

BRIEFS FOR APPELLANT:          NO BRIEF FILED FOR APPELLEE.

Louis P. Winner
Louisville, Kentucky

Sidney M. Vieck
Louisville, Kentucky