RENDERED: SEPTEMBER 28, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2016-SC-000644-DGE  DATE 10/19/17 Kim Redmon, DC

STEPHEN MARCHESE                                      APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.          CASE NO. 2016-CA-000262-MR
JEFFERSON CIRCUIT COURT
NOS. 16-D-500129 AND 16-D-500129-001

ALLISON AEBERSOLD                                      APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

### REVERSING

Appellant, Stephen Marchese, appeals from a decision of the Court of Appeals which affirmed the Jefferson Family Court's issuance of a Domestic Violence Order (DVO) upon a petition filed by Appellee Allison Aebersold. As grounds for relief, Marchese presents three arguments: (1) the trial court improperly considered and relied upon extrajudicial evidence; (2) the extrajudicial evidence, even if properly received, was inadmissible hearsay; and (3) the DVO was issued against Marchese in violation of his due process rights.

Upon discretionary review, we conclude that the trial court committed structural error and that its use of extrajudicial evidence from an undisclosed source was improper. Accordingly, we reverse the Court of Appeals' opinion,

vacate the DVO, and remand for additional proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Marchese and Aebersold had a romantic relationship. The couple broke up in January of 2016. A few days later Aebersold petitioned the Jefferson Family Court for an emergency protective order (EPO) and the corresponding domestic violence order (DVO). Her petition alleged that she and Marchese "have been apart for a few days now and [Marchese] will not leave me alone, he is stalking me showing up in my driveway at night . . . ." The court entered an EPO and set a hearing date for the statutorily-mandated DVO hearing.

At the DVO hearing, both parties appeared *pro se*. Aebersold testified that Marchese had never hit her, but that he had shoved her when he was drunk. She also testified that after the issuance of the EPO, he parked in his car in her driveway, he asked third parties to contact her on his behalf, he sent text messages to her mother threatening to post sexually explicit photographs of Aebersold on the internet, and he repeatedly contacted her through social media. Aebersold testified that Marchese was very controlling and manipulative; that he would not leave her alone; and that he had shown up in her driveway at night on an unspecified number of occasions.

Aebersold's mother, Whitney Aebersold, testified that while the couple was together Marchese tried to prevent her from talking on the phone to her daughter. Whitney said that she had urged Marchese to leave her daughter

2

alone. She also confirmed that Marchese threatened to post on the internet sexually explicit photographs of himself and Aebersold.

Marchese admitted that he had threatened to post the embarrassing photographs. He admitted that he repeatedly tried to contact Aebersold because they had "made a pact to not give up on each other." He denied obstructing Whitney's efforts to contact Aebersold. He also denied that he tried to contact her through a third party, stating that he had only asked friends *about* her, but had never asked them to contact her. Marchese also testified that he would soon relocate in New Hampshire and no longer had any desire to contact Aebersold.

Marchese's brother, Paul, testified that Marchese did not have a violent history. He said he had never seen any domestic violence occur between Aebersold and Marchese. Paul also testified that Marchese's work schedule would not have allowed him to stalk Aebersold. Amy Green, a woman who had formerly lived with Marchese, testified that she had never seen him engaged in domestic violence. She also said that his work schedule would not have allowed him to stalk Aebersold.

After hearing the testimony, the trial judge called for a brief recess and asked Marchese for his social security number. He complied, but apparently did so with some hesitation. When the hearing reconvened, the trial judge began with a review of the evidence that had been presented; she described what she perceived as Marchese's reluctance to give his social security number as a "red flag." The judge then said: "we have [Marchese's social security

3

number]" and "we also have [Marchese's] record from other states." The judge then announced: "You have an assault and battery from Virginia Beach," to which Marchese responded, "It should have been dropped." The trial judge replied: "Well, it wasn't. . . Your brother testified that you have never been violent." The trial judge then stated to Marchese that he had "engaged in every manipulative behavior that she had ever seen." Marchese attempted to respond but the trial court commanded him to stop, and then finished her recitation of the evidence. The trial court then announced from the bench that the DVO would be granted. The judge next instructed Marchese to wait outside the courtroom for his copy of the order. At no time did the trial judge disclose the source of her knowledge of the alleged Virginia Beach assault conviction or describe the legal grounds upon which that information was interjected into the DVO hearing; nor did the judge give Marchese an opportunity to address the issue.

The judge wrote the following findings on the docket sheet:

1) [Marchese] has exerted controlling behavior over Petitioner, limiting her contact w/ family and friends;
2) [Marchese] uses humiliation tactics to control Petitioner;
3) [Marchese] stalked Petitioner, parking in her driveway at night & inquiring of her through 3rd parties after EPO was entered;
4) [Marchese] shoved Petitioner while drunk and threatened her;
5) [Marchese] has a history of domestic violence;
6) [Domestic violence] could occur in the future.

Marchese appealed. The Court of Appeals concluded that the trial court's extrajudicial research concerning Appellant's criminal record was error,

4

but it nevertheless affirmed the entry of the DVO on the basis of harmless error. We granted discretionary review.

## II. THE TRIAL JUDGE'S RECEIPT OF EXTRAJUDICIAL EVIDENCE WAS STRUCTURAL ERROR

Although not raised or addressed as an issue by the Court of Appeals, we would be remiss if we chose to overlook the most fundamental flaw in the issuance of the DVO against Marchese. Even when a litigant fails to assert in a timely manner the grounds upon which a judge should recuse, "a trial judge is obligated to disqualify himself 'when presiding over a matter that would violate statutory mandates for impartiality.'" *Alred v. Commonwealth, Judicial Conduct Commission*, 395 S.W.3d 417, 443–44 (Ky. 2012) (citing Judicial Canon 3E(1)(a) and KRS 26A.015).

KRS 26A.015(2) requires a judge to "disqualify himself in any proceeding: (a) Where he has . . . personal knowledge of disputed evidentiary facts concerning the proceedings . . . [and] (e) Where he has knowledge of any other circumstances in which his impartiality might reasonably be questioned." The trial judge's extrajudicial investigation, apparently undertaken during the recess after she acquired Marchese's social security number, gave the judge personal knowledge of a disputed evidentiary fact—Marchese's history of violent behavior.

The judge in *Alred* conducted an extrajudicial investigation to discover incriminating information about a party in litigation before him. Citing *Bussell v. Commonwealth*, 882 S.W.2d 111, 112 (Ky. 1994), we commented upon the

5

impropriety of considering "potentially incriminating information about [a party in litigation] from extrajudicial sources." We said: "Recusal is appropriate only when the information is obtained [by the judge] from an extrajudicial source." We further explained: "*Because Judge Alred gathered information about the impending matters from extrajudicial sources, he was required to recuse when those cases came before him as judge.*" 395 S.W.3d at 443 n. 92. (Emphasis added.)

Upon the same subject, the United States Supreme Court stated that a judge's critical, disapproving, or even hostile comments directed to a litigant during a trial "ordinarily do not support a bias or partiality challenge" to disqualify the judge, but "[t]hey *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555 (1994) (emphasis in original).

After consulting some undisclosed source to obtain extrajudicial information about Marchese pertinent to a contested issue pending before the court, the trial judge was disqualified and at that point was obligated to recuse *sua sponte.* The judge's bias and antagonism against Marchese was demonstrated by comments she made *after* receiving the extrajudicial evidence. As further indicated by her refusal to allow Marchese to respond to the newly-disclosed evidence and ordering him to leave the courtroom, the judge's failure to recuse was structural error which indelibly tainted the remainder of the hearing and the issuance of the DVO. "Structural errors are defects affecting

6

the entire framework of the trial and necessarily render the trial fundamentally unfair. Such errors preclude application of the harmless error rule and warrant automatic reversal under that standard." *McCleery v. Commonwealth*, 410 S.W.3d 597, 604 (Ky. 2013) (citing *Neder v. United States*, 527 U.S. 1, 8–9 (1999)). For that reason, we reverse the Court of Appeals and vacate the domestic violence order issued in this matter.

### III. THE TRIAL COURT ERRONEOUSLY ACCEPTED AND USED EXTRAJUDICIAL INFORMATION

Our holding in the previous section of this opinion resolves this appeal. However, for further guidance of the bench and bar we address the merits of the evidentiary issue presented. The trial court never explicitly stated a rationale to justify the use of the extrajudicial information she received during the recess. Marchese and the Court of Appeals treated the matter as one that implicated the doctrine of judicial notice, and the Court of Appeals correctly analyzed the situation as the erroneous application of that doctrine.[1]

KRE 201 governs our application of the doctrine of judicial notice, and it provides two "kinds of fact" that can be admitted into evidence under that theory: facts that are "[g]enerally known within the county from which the jurors are drawn, or, in a nonjury matter, the county in which the venue of the action is fixed," KRE 201(b)(1); and facts that are "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

---

[1] Abersold did not file a brief in the Court of Appeals.

7

questioned," KRE 201(b)(2). The evidence of Marchese's alleged Virginia Beach conviction fits neither category.

First, Marchese's alleged Virginia Beach conviction is not a fact "[g]enerally known within the county . . . in which the venue of the action is fixed," which is Jefferson County, Kentucky. Therefore, qualification for judicial notice under KRS 201(b)(1) fails.

In clarification of KRE 201(b)(2), we have explained that "sources whose accuracy cannot reasonably be questioned" means "unimpeachable sources," which, depending on the specific circumstance, may include general authorities like "encyclopedias, calendars, maps, medical and historical treatises, almanacs, and public records." *Stokes v. Commonwealth*, 275 S.W.3d 185, 188 (Ky. 2008) (quoting Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 1.00[3][c] at 10 (4th ed. 2003)).

Ordinarily, a criminal conviction is a matter of public record, but we have been careful to distinguish the types of public records which may be subject to judicial notice under KRE 201(b)(2):

> Under KRE 201 . . . it may be appropriate to notice court records for the occurrence and timing of matters reflected in them—the holding of a hearing, say, or the filing of a pleading—but it will generally not be appropriate to notice the truth of allegations or findings made in another matter, since such allegations or findings generally will not pass the "indisputability" test. *See Meece v. Commonwealth*, 348 S.W.3d 627, 692–93 (Ky. 2011) (upholding trial court's decision to take notice that a criminal charge had been dismissed, but not to take notice of the purported reason for the dismissal).

8

*Rogers v. Commonwealth*, 366 S.W.3d 446, 451-52 (Ky. 2012). *See also M.A.B. v. Cabinet for Health & Family Services*, 456 S.W.3d 407, 412 (Ky. App. 2015) ("[I]t is a well-established principle that a trial court may take judicial notice of its own records and rulings, and of all matters patent on the face of such records, including all prior proceedings in the same case."). Because the judge failed to disclose the source of the information upon which she relied, the record fails to support that the information was obtained from a properly-authenticated public record.

The only other basis for taking judicial notice of the alleged conviction would be under KRE 201(b)(2), if it is a fact "[c]apable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The trial court did not disclose the source of its information, so the accuracy of the source cannot be established. Further, the verity of an undisclosed source reporting a criminal conviction in a foreign jurisdiction is not a matter that is "capable of accurate and ready determination."

The doctrine of judicial notice is a rule of convenience that allows a court to use commonly-known assumptions of fact as evidence. In doing so, however, the rule bypasses some of the fundamental requirements for verification and authenticity that otherwise safeguard the integrity of evidence. For that reason, we construe KRE 201 as setting a high standard for admitting evidence by judicial notice and we are not inclined to lower the bar.

So strong is our commitment to the restrictive interpretation of facts "capable of accurate and ready determination by resort to sources whose

accuracy cannot reasonably be questioned" that we have expressly rejected CourtNet, the Kentucky Court of Justice's online database of criminal convictions from Kentucky courts, as a valid source for taking judicial notice of a Kentucky criminal conviction. Instead, a true copy of the authenticated official court record is required. *Finnell v. Commonwealth*, 295 S.W.3d 829, 835 (Ky. 2009) ("[E]vidence based on a document such as CourtNet, which proclaims that it is not official, may not reflect the true status of cases, and whose accuracy cannot be guaranteed, is not competent to be weighed in fixing a penalty.").[2] It follows that treating the existence of an out-of-state conviction gleaned from an undisclosed source as a proven fact under the guise of judicial notice ignores the clear language of KRE 201, and is an abuse of discretion.

It is significant that nothing else in the evidentiary record supports the critical finding that Marchese had a history of violent behavior.[3] "It is well

---

[2] The trial court's use of the Virginia conviction fails to comply with the established procedures for properly proving an out-of-state conviction as set forth under KRS 422.040, KRE 901(b)(7), KRE 902, KRE 1005, and *Merriweather v. Commonwealth*, 99 S.W.3d 448 (Ky. 2003). (We note here the *Merriweather* reference on page 452 to "KRS 422.020" is inaccurate; the statute referred to is KRS 422.040.) "Evidence of prior convictions must come from the official court record, or certified copies thereof." *Finnell*, 295 S.W.3d at 835 (citing *Garner v. Commonwealth*, 645 S.W.2d 705, 707 (Ky. 1983)).

[3] The only other evidence that even hints of a history of violence is the testimony that Marchese "shoved" Abersold. However, we note that on remand from this Court in *Daugherty v. Telek*, 366 S.W.3d 463 (Ky. 2012), the Court of Appeals held in *Telek v. Daugherty*, 376 S.W.3d 623, 628 (Ky. App. 2012), that evidence that the action of "pushing Kathryn out of the way to enter the house was not enough to establish that an act of domestic violence had occurred." Marchese presented witnesses who testified that he had no history of violence. It follows that the trial court's reliance upon its extrajudicial research was central to its holding to issue the DVO.

settled that extrajudicial evidence, not part of the record, cannot form the basis of a decision." *Carpenter v. Schlomann*, 336 S.W.3d 129, 132 (Ky. App. 2011) (quoting *Lynch v. Lynch*, 737 S.W.2d 184, 186 (Ky. App. 1987)). We are satisfied that the trial court was improperly influenced by the use of extrajudicial evidence. Absent a valid application of the rules for taking judicial notice, the use of the information acquired by the judge from an unidentified source is simply an inappropriate use of extrajudicial evidence to guide a ruling in a matter.

## A. Due Process

Aside from the use of information that fails to qualify for judicial notice under KRE 201(b), more significant is the trial court's failure to honor the procedural requirements of KRE 201(e) that transfuse the constitutional lifeblood of due process into our evidentiary process for taking judicial notice of generally obvious and indisputable facts. KRE 201(e) provides:

> Opportunity to be heard. A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken.

"The fundamental requirement of procedural due process is simply that all affected parties be given 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Hilltop Basic Resources, Inc. v. County of Boone*, 180 S.W.3d 464, 469 (Ky. 2005) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citation and quotation marks omitted)).

We said in *Commonwealth v. Howlett* that whenever

11

judicial notice [is to] be taken of a fact, the other party is afforded the opportunity to respond. ... Here, there was no opportunity to reasonably question the source. The drafters of KRE 201, following the lead of most commentators, encouraged courts to give advance notification when feasible: If a court acts on its own initiative, the parties should be informed of the facts noticed and given an opportunity to respond.

328 S.W.3d 191, 194 (Ky. 2010) (citation and quotation marks omitted).

After hearing the trial judge announce that she would accept as a fact that he had a prior assault conviction, Marchese attempted to exercise his right to be heard on the issue by challenging the information. The trial court injudiciously cut him off, issued the ruling, and directed Marchese to leave the courtroom without further discussion. This refusal to permit Marchese to challenge or explain the evidence accepted into the record as a fact admitted under the doctrine of judicial notice violated both KRE 201(e) and Marchese's constitutional due process rights.

**B. Hearsay**

The trial court's use of evidence derived from an unidentified source also violated the traditional hearsay rules codified in KRE 801, *et seq.* "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." KRE 801. The information imparted to the trial judge about Marchese's assault conviction, which was then accepted into evidence, apparently as a judicially noticed fact, was relevant to the issue before the trial court *only* if it were true. The trial judge relied upon an out-of-court statement from some undisclosed source to establish the truth of the matter asserted therein; it is classic

12

hearsay evidence. Without knowing of the source of the judge's information, we are unable to apply any of the exceptions to the hearsay rule.

## IV. CONCLUSION

In summary, we conclude that the trial judge's undertaking to obtain and use as evidence extrajudicial information relating to a party in the case caused her disqualification from proceeding further as the presiding judge in this matter. Her failure to recuse at that point was structural error undermining the integrity of the resulting DVO. Because structural error supersedes harmless error review, we need not review the finding of the Court of Appeals that the error was harmless.

For the foregoing reasons, the opinion of the Court of Appeals is reversed, and the Domestic Violence Order issued in this matter by the Jefferson Family Court is vacated, and the matter is remanded for additional proceedings consistent with this opinion.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Ryan C. Vantrease
600 West Main Street, Suite 500
Louisville, KY 40202

COUNSEL FOR APPELLEE:

Courtney Kellner
600 West Main Street, Ste. 100
Louisville, KY 40202

13