RENDERED: FEBRUARY 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0061-MR

KEVIN THOMAS CANTRELL                                    APPELLANT

v.                 APPEAL FROM WARREN CIRCUIT COURT
              HONORABLE DAVID A. LANPHEAR, JUDGE
                   ACTION NO. 22-CI-00247

LEANNA MARIE CANTRELL                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ECKERLE, L. JONES, AND KAREM, JUDGES.

KAREM, JUDGE: Kevin Thomas Cantrell ("Kevin") appeals from the Warren

Circuit Court's findings of fact, conclusions of law, and judgment concerning

custody and timesharing (the "Judgment"). Kevin argues that the circuit court

abused its discretion by issuing arbitrary findings contrary to the evidence

presented. Finding no error, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case has a complex procedural history, as recounted by the

Warren Circuit Court in its Judgment:

> This action was originally filed on July 20, 2017, as a Dissolution of Marriage case in Logan Circuit Court, Civil Action No. 17-CI-00207. The parties entered into a Separation Agreement filed January 5, 2018, whereby they agreed that they would have "joint legal custody" of their two children, K.M.C. [born in June 2012] and C.C. [born in April 2014], . . . with [Leanna Cantrell (now Roper; hereafter "Leanna")] . . . designated as the "primary residential custodian" of the children. The Separation Agreement was incorporated into the Findings of Fact, Conclusions of Law and Decree of Dissolution of Marriage entered February 6, 2018.
>
> On May 1, 2018, Butler Circuit Judge Mike McKown entered a Dependency, Neglect and Abuse [("DNA")] Emergency Custody Order removing K.M.C. from [Leanna's] custody following the untimely death of the parties' son, C.C.[1]

Tragically, C.C. drowned in a pool located at Leanna's home on that same day.

Leanna was not home at the time but testified that she had left C.C. in the care of

another adult staying in her home. A Butler County grand jury indicted Leanna for

second-degree manslaughter in December 2018, and a jury found her guilty in

September 2021. The Butler Circuit Court sentenced Leanna to five (5) years

---

[1] "The Order was issued in Butler Circuit Court, Case No. 18-J-00029-001, *IN RE*: *K.M.C.*, a child. The drowning incident occurred in Morgantown, Kentucky."

imprisonment, and she was ultimately released on shock probation in November 2021.

> Following the issuance of the Emergency Custody Order, it appears no further action was taken in the [DNA] case, [and the Cabinet for Health and Family Services (the "Cabinet")] closed its case and the matter was eventually removed to the Court's inactive docket in January 2019. . . . [Leanna's] visitation with [K.M.C.], such as it was, continued at the Family Enrichment Center in Bowling Green.
>
> In March 2021, [Leanna] began supervised visits on alternating Sundays. . . .
>
> On November 19, 2021, Kevin Cantrell . . . filed a Verified Petition for Involuntary Termination of Parental Rights (hereafter "TPR") against [Leanna] in Warren Circuit Court, Confidential Action No. 21-AD-00143. On December 7, 2021, just more than three weeks later, [Leanna] filed a Motion Regarding Custody and Timesharing in Butler Circuit Court Case No. 19-CI-00047 (subsequently transferred to Warren Circuit Court and re-numbered to 22-CI-00247), seeking to modify the custody arrangement to increase her timesharing.
>
> Following a hearing on April 20, 2022, the Court entered an Order Regarding April 20, 2022 Hearing, wherein this Court Ordered that both actions – the TPR case and the Custody/Timesharing case – would be tried simultaneously before the Court. The original trial date was set for May 11, 2022, but that was subsequently moved to November 9 and 10, 2022.[2]

---

[2] "While Judge McKown denied a Motion to Transfer Venue to Warren Circuit Court in the Order entered December 7, 2021, he reversed his decision and transferred the case to Warren Circuit Court by Order entered February 24, 2022. Accordingly, the action is now identified as Warren Circuit Court, Civil Action No. 22-CI-00247[.]"

Accordingly, [Kevin's] TPR case against [Leanna] and [Leanna's] Motion Regarding Custody and Timesharing against [Kevin] came before the Court for final trial at the same trial on November 9 and 10, 2022.

Meanwhile, since December 2021, [Leanna] has exercised several years of supervised visitation with K.M.C. . . .

On that date and time, the Court concurrently heard and received evidence in [Kevin's] TPR case and on [Leanna's] custody/timesharing Motion from which this Court now enters its Findings of Fact, Conclusions of Law and Judgment concerning permanent custody and timesharing arrangements.

The Warren Circuit Court ordered that the parties exercise joint custody of K.M.C., with Kevin as the primary residential custodian. Additionally, the court granted Leanna timesharing pursuant to the 8th Judicial Circuit Timesharing Guidelines. This appeal followed.

We will discuss further facts as they become relevant.

## ANALYSIS

### 1. Standard of Review

As the Kentucky Supreme Court stated, "[w]hen an appellate court reviews the decision in a child custody case, the test is whether the findings of the trial judge were clearly erroneous or that he abused his discretion." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citation omitted). A factual finding "is clearly erroneous if it is not supported by substantial evidence, which is evidence

-4-

sufficient to induce conviction in the mind of a reasonable person." *B.C. v. B.T.*, 182 S.W.3d 213, 219 (Ky. App. 2005) (citation omitted). Moreover, "[t]he test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Miller v. Eldridge*, 146 S.W.3d 909, 914 (Ky. 2004) (citation omitted).

## 2. **Discussion**

On appeal, Kevin argues that the trial court abused its discretion by granting Leanna joint custody and equal timesharing, claiming Leanna failed to satisfy her burden under Kentucky Revised Statute ("KRS") 403.340. In the Judgment, the court stated it was examining Leanna's motion under KRS 403.340 – the statute concerning the modification of a custody decree – rather than KRS 403.270(2) – the statute dealing with an initial custody determination. The court did so because it could "find no satisfactory reason or authority upon which to ignore the Temporary Sole Custody Order entered in [the Butler County dependency, neglect, and abuse ("DNA") action] and because its evaluation of the motion under KRS 403.340 included an examination under the best interest standard of KRS 403.270."

We pause in our analysis to note the distinction between custody in the context of a DNA action pursuant to KRS Chapter 620 and a custody matter determined under KRS Chapter 403. Kentucky courts have held that, even if a

court awards permanent custody in a DNA action, it is not necessarily a custody decree as that term is defined elsewhere in Kentucky's statutory framework. *N.L. v. W.F.*, 368 S.W.3d 136, 147 (Ky. App. 2012). A panel of this Court has explained the distinction, noting:

> a [DNA permanency] hearing and an award of custody are not precluded by the structure of KRS Chapter 620, so long as the proper procedures are followed. *See London v. Collins*, 242 S.W.3d 351, 356 (Ky. App. 2007) ("***if a permanency order in a dependency action brought under Chapter 620 complies with KRS 403.270(2) and is based on the best interests of the child, determined after considering the factors set out in that statute, we . . . believe [that] it would qualify as a 'custody decree' and that the requirements of KRS 403.340 would have to be satisfied in order to amend it***."). We are mindful, though, of our holding in *S.R. v. J.N.*, 307 S.W.3d 631 (Ky. App. 2010), in which we specifically addressed the differences between DNA and custody cases: "The purpose of the dependency, neglect, and abuse statutes is to provide for the health, safety, and overall well-being of the child. KRS 620.010. It is not to determine custody rights which belong to the parents. ***A dependency, neglect or abuse adjudication hearing is simply not the appropriate forum for rehashing custody issues***." *Id*. at 637.

*N.L. v. W.F.*, 368 S.W.3d at 147 (emphasis added) (footnote omitted). Thus, a permanent custody hearing and award are possible in a DNA proceeding, but only if "the proper procedures are followed." *Id*.

In this case, to the extent that the trial court treated the temporary sole custody order in the DNA proceeding as a "custody decree," it erred in doing so, as

the Butler Circuit Court made no findings that complied with KRS Chapter 403 or

determined K.M.C.'s best interests.

Nevertheless, the circuit court was ultimately correct in conducting its

analysis under KRS 403.340 in the Judgment. KRS 403.340 provides, in relevant

part:

> (1) As used in this section, "custody" means sole or joint custody, whether ordered by a court or agreed to by the parties.
>
> . . .
>
> (3) If a court of this state has jurisdiction pursuant to the Uniform Child Custody Jurisdiction Act, the court shall not modify a prior custody decree unless after hearing it finds, upon the basis of facts that have arisen since the prior decree or that were unknown to the court at the time of entry of the prior decree, that a change has occurred in the circumstances of the child or his custodian, and that the modification is necessary to serve the best interests of the child. When determining if a change has occurred and whether a modification of custody is in the best interests of the child, the court shall consider the following:
>
> > (a) Whether the custodian agrees to the modification;
> >
> > (b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;
> >
> > (c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;
> >
> > (d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a de facto custodian.

(4) In determining whether a child's present environment may endanger seriously his physical, mental, moral, or emotional health, the court shall consider all relevant factors, including, but not limited to:

(a) The interaction and interrelationship of the child with his parent or parents, his de facto custodian, his siblings, and any other person who may significantly affect the child's best interests;

(b) The mental and physical health of all individuals involved;

(c) Repeated or substantial failure, without good cause as specified in KRS 403.240, of either parent to observe visitation, child support, or other provisions of the decree which affect the child, except that modification of custody orders shall not be made solely on the basis of failure to comply with visitation or child support provisions, or on the basis of which parent is more likely to allow visitation or pay child support;

(d) If domestic violence and abuse, as defined in KRS 403.720, is found by the court to exist, the extent to which the domestic violence and abuse has affected the child and the child's relationship to both parents.

Therefore, the circuit court's task was to determine whether a modification of the original joint custody decision incorporated by the Logan Circuit Court into its February 2018 divorce decree was appropriate under KRS 403.340.

In the case *sub judice*, we find no error in the circuit court's factual findings and analysis under the modification statute. Substantial evidence existed in the record that a joint custody arrangement continued to be in K.M.C.'s best interest. Indeed, the circuit court heard and considered testimony from various witnesses at the November 2022 trial, including a psychologist who interviewed K.M.C., supervisors of Leanna's visitation with K.M.C., Leanna's probation officer, therapist, and pastor, as well as Leanna and K.M.C. themselves. Nor do we find that the circuit court otherwise abused its discretion in ultimately concluding that a joint custody arrangement – with Kevin as primary residential custodian – served K.M.C.'s best interests.

Kevin next argues that the trial court erred in failing to restrict Leanna's visitation and takes issue with the circuit court's interview of K.M.C. in its chambers. However, we note that the circuit court entered a subsequent order on June 6, 2024, granting Kevin's motion to suspend Leanna's timesharing of K.M.C.[3] Thus, we decline to address these arguments as moot.

---

[3] Because we seek to present a complete picture of this case, we reviewed the procedural history of the case in Kentucky CourtNet. Judicial notice may not be taken of Kentucky CourtNet records to present as evidence in a trial. *See Marchese v. Aebersold*, 530 S.W.3d 441 (Ky. 2017). But information about the existence of charges may be referenced by an appellate court

## CONCLUSION

For the foregoing reasons, we affirm the Warren Circuit Court's Judgment.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE: |
|---|---|
| Christopher T. Davenport | Ashlea Shepherd Porter |
| Bowling Green, Kentucky | Bowling Green, Kentucky |

---

to provide perspective for the trial court proceedings. *See*, *e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 (Ky. 2020). On May 24, 2024, Kevin filed a motion to suspend Leanna's timesharing based on an Emergency Protective Order that had been issued against Leanna's current husband. The judge granted that motion on June 6, 2024. Currently pending before the circuit court is a motion filed by Leanna on July 29, 2024, to restore her timesharing schedule. At the time of the writing of this Opinion, no hearing has been held or order entered addressing the motion and thus, Leanna's timesharing remains suspended.