RENDERED: MAY 2, 2025; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0322-MR

RITA R. WHITE AND MARGARET
SUE PARIS                                                               APPELLANTS


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.                  HONORABLE BRYAN GATEWOOD, JUDGE
                    ACTION NO. 19-CI-503731


TIARA M. FOWLER AND PHILLIP
FOWLER                                                                    APPELLEES


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; KAREM AND TAYLOR, JUDGES.

KAREM, JUDGE: Rita R. White ("White") and Margaret Sue Paris ("Paris"),

maternal grandmother and great-grandmother, respectively, to two minor children,

J.F. and T.F., appeal from the trial court's order denying them visitation, ordering

the payment of attorney's fees, and denying the motion for Judge Gatewood to

recuse. After careful review of the briefs, record, and law, we reverse the family

court, vacating the trial court's orders denying grandparents' visitation and granting the payment of attorney's fees. Further, on remand, both Judge Gatewood and Allison Russell shall recuse from any further participation in this case.

## FACTUAL AND PROCEDURAL BACKGROUND

Because the Opinion of the Court relies on procedural issues alone, the majority of the underlying facts in this case are not pertinent to the Court's decision. Thus, we will recite the procedural background and only identify other facts within the body of the Opinion as necessary.

This is the second appeal arising from litigation between the grandparents of J.F. and T.F. and their parents, Tiara and Phillip Fowler ("Tiara" and "Phillip," respectively). On December 16, 2019, White and Paris (collectively, "Grandparents") filed a petition seeking custody, parenting time, and/or visitation. The original trial judge, Judge Deana "Dee" McDonald, retired,[1] bifurcated the issues, and allowed the parties to proceed on the issue of *de facto* custodian, holding the issue of visitation in abeyance. Additionally, on October 20, 2020, the court appointed Allison Russell as Friend of the Court pursuant to Kentucky Revised Statute ("KRS") 403.090 and ordered Grandparents to be responsible for payment of her fees. Ultimately, the court found Grandparents did not meet the

---

[1] Judge McDonald was sitting as the appointed judge for Jefferson Family Court, Division 8, following a vacancy created by a retirement. Judge McDonald finalized the issue of *de facto* custodian in this case prior to its appeal.

qualifications to be found *de facto* custodians and this Court upheld that decision. *White v. Fowler*, No. 2021-CA-0668-MR, 2022 WL 16702686 (Ky. App. Nov. 4, 2022), *opinion superseded on reh'g*, No. 2021-CA-0668-MR, 2023 WL 2193229 (Ky. App. Feb. 24, 2023).[2]

Once the issue of *de facto* custodian was resolved, Grandparents renewed their motion for visitation with the trial court. By this date, Judge Bryan Gatewood was the new sitting judge for Jefferson Family Court, Division 8. Notably, at some point in the ligation, Allison Russell began identifying herself as counsel for Phillip and submitting filings to the court on his behalf.

On March 13, 2023, the court heard arguments on Tiara's motion for fees based on past litigation and the appeal of the *de facto* custodian issue, as well as an advancement of $6,000 in fees to defend Grandparents' visitation action. On May 2, 2023, the court entered an order stating the issue of fees with respect to the *de facto* portion of the matter was concluded, seemingly denying the same. However, the court went on to grant an award of $2,000 for attorney's fees and costs associated with the motion for grandparent visitation. Grandparents moved to set the award aside but there was no immediate final order from the court.

---

[2] During the pendency of this appeal, Tiara and Phillip filed for attorney's fees with the trial court for defending Judge McDonald's order. On October 6, 2021, the court denied Tiara's motion. On October 20, 2021, an order was entered denying Phillip's motion for attorney's fees indicating the court had little information regarding his financial circumstances with which to review his request appropriately.

On October 10, 2023, Tiara's counsel filed two motions on behalf of the "Respondent Parents." The first moved for attorney's fees to be paid to himself and Allison Russell. The second was a motion for the court to rule on the still pending motion of Grandparents to set aside the previous award of attorney's fees. Finally, on September 27, 2023, a hearing was held regarding all outstanding issues with the court including visitation and attorney's fees.

During the hearing Grandparents' attorney identified himself as representing both White and Paris. Allison Russell identified herself as counsel for Phillip. Grandparents were present in the courtroom and Tiara and Phillip appeared via Zoom. Prior to the taking of testimony, Tiara moved the court for separation of witnesses, specifically asking for the removal of Paris. Counsel reasoned grandparent visitation did not extend to great-grandparents thus Paris could not be a party to the litigation. Over Paris's objection, the court asked Paris to wait outside where she remained throughout the remainder of the hearing.

Over the three-hour long hearing, testimony was taken from both White and Tiara. At the conclusion of Grandparents' case, Parents' attorneys moved for dismissal, arguing that Grandparents had not met their burden to sustain their motion for visitation. The court ordered the parties to submit briefs on the subject and stated that, should he deny the motion, the court would reconvene for the purpose of allowing Parents to present their defense.

In the court's order following the hearing entered February 20, 2024, the court addressed the issue of Paris as party to the visitation action. He noted that no objection had been made to her presence in the suit until the day of the hearing. He emphasized that Paris had been an integral part of the process to date and found the failure of Parents to object prior to the hearing acted as a waiver of her participation. He thus declined to dismiss her as a party.[3]

The court went on to overrule Parents' motion to dismiss. However, the court ultimately denied Grandparents' request for visitation finding that the court was "not convinced that granting [visitation] would not ultimately be detrimental to the children." The court specifically stated it had been privy to communications in various modes from Grandparents attacking Parents. Lastly, the court ordered "Petitioner's [sic] [to] pay the sum of $2,000.00 representing attorney's fees and costs associated with defending the action."

Grandparents subsequently filed a motion to recuse Judge Gatewood and to alter, amend, or vacate his rulings on visitation and attorney's fees. Briefs were filed by the parties and Judge Gatewood entered an eight-page order denying all of Grandparents' motions.[4] This appeal followed.

---

[3] This issue is not before us on appeal.

[4] Judge Gatewood's order states the court heard argument of counsel in relation to Grandparents' motions. However, this Court could find no evidence of a hearing being held on Grandparents' motion to alter, amend, or vacate and motion for recusal.

## APPELLANTS' MOTION TO STRIKE APPELLEE'S BRIEF

Appellants have moved to strike Appellee's brief alleging Appellee's brief failed to: 1) contain a statement on whether they acknowledge that Appellants preserved their arguments for appeal, and 2) provide a single reference to the specific location in the record.

In their response to the motion to strike, the Appellees correctly point out that the requirement to provide a preservation statement per Kentucky Rule of Appellate Procedure ("RAP") 32(A), is directed at *Appellant's* brief and not Appellee's. RAP 32(A) reads in pertinent part:

> **(A)** *Appellant's* **Opening Brief**. An *appellant's opening brief* must contain the following sections, in the following order.
>
> . . .
>
> (4) An argument conforming to the statement of points and authorities, with ample references to the specific location in the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument *a statement with reference to the record showing whether the issue was properly preserved for review* and, if so, in what manner.

(Emphasis added.) Therefore, we find no violation of RAP 32(A) by Appellee.

Conversely, RAP 32(B) outlines the responsibilities of Appellee when filing a brief. RAP 32(B) reads in pertinent part:

**(B) Appellee's Response Brief**.  An appellee's response brief must contain the following sections:

. . .

(3) A **counterstatement of the case** stating whether the appellee accepts the appellant's statement of the case and, if not, setting forth the matters the appellee considers essential to a fair and adequate statement of the case in accordance with the requirements for appellant's statement of the case.

(4) An **argument** conforming to appellee's counterstatement of points and authorities and to the requirements for appellant's argument.

Appellants are correct in their allegation that Appellee failed to cite to the record in any part of their brief.  Appellate procedural rules, including those for briefing, cannot be ignored by appellate advocates.  *See Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted).  "They are lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination." *Id.*  "Our options when an appellate advocate fails to abide by the rules are:  (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, [RAP 31(H)(1)]; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Id.* at 696 (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)).  We choose to ignore the deficiency and proceed with the review.  However, counsel is warned that in the future this Court may not be so

tolerant, and counsel is admonished to strictly follow the rules or risk having their brief stricken and/or being held in contempt.

## FRIEND OF THE COURT

On October 20, 2020, Judge McDonald appointed Allison Russell Friend of the Court ("FOC") pursuant to KRS 403.090, which reads:

> **403.090 Friend of the court; appointment; tenure; duties; wage withholding collections; compensation**
>
> . . .
>
> (4) In any action for divorce where the parties have minor children, the friend of the court, if requested by the trial judge, shall make such investigation as will enable the friend of the court to ascertain all facts and circumstances that will affect the rights and interests of the children and will enable the court to enter just and proper orders and judgment concerning the care, custody, and maintenance of the children. The friend of the court shall make a report to the trial judge, at a time fixed by the judge, setting forth recommendations as to the care, custody, and maintenance of the children. The friend of the court may request the court to postpone the final submission of any case to give the friend of the court a reasonable time in which to complete the investigation.
>
> . . .
>
> (6) The friend of the court shall not directly or indirectly represent any party to a divorce action except as herein authorized to represent the minor children of parties to a divorce action, but if an allowance is made for the support of a spouse and an infant child or children, may proceed to enforce the payment of the allowance made to the spouse also.

While the litigation among the parties was not a divorce action as contemplated in KRS 403.090, the court nevertheless, after discussion with both parties, appointed Ms. Russell to act in accordance with said statute giving her both the title of FOC and the responsibility to carry out her duties as outlined by statute. Nowhere in the record does the court vacate its order of appointment. Additionally, a review of the trial court record via CourtNet shows that Ms. Russell is still identified as Friend of the Court with a memo "Counsel for Father of Children."[5]

Clearly, at some point Ms. Russell deviated from her role as FOC and began representation of Phillip in contravention of her FOC statutory obligations. Ms. Russell cannot wear both hats and is specifically precluded from representing a parent once she has been appointed FOC. "The friend of the court *shall not* directly or indirectly represent any party . . . ." KRS 403.090(6) (emphasis added). Moreover, her participation in the litigation as both FOC and Phillip's counsel tainted all proceedings. It is impossible to determine what information she gleaned as FOC that was later used in the representation of Phillip.

It is important to note, the court specifically stated in its order denying grandparents visitation it did so with no evidence as to the wishes of the children

---

[5] CourtNet is Kentucky's case management system. Judicial notice may not be taken of CourtNet records to be presented as evidence in trial. *See Marchese v. Aebersold*, 530 S.W.3d 441 (Ky. 2017). But information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings. *See, e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020).

with respect to seeing Grandparents. Had Ms. Russell acted in her appointed role, she would have provided the court this information. KRS 403.090 specifically mandates an FOC "***shall*** make such investigation as will enable the friend of the court to ascertain all facts and circumstances that will affect the rights and interests of the children and will enable the court to enter just and proper orders and judgment concerning the care, custody, and maintenance of the children." KRS 403.090(4) (emphasis added). Thus, Ms. Russell is recused from further participation in this appeal and any further litigation among these parties. Lastly, we are forced to vacate the court's orders as her participation in the litigation as Phillip's attorney was improper and fatal to the court's decisions.

## MOTION TO RECUSE

Judges of this Commonwealth have "a duty to sit" absent valid reasons for recusal. *Commonwealth, Revenue Cabinet v. Smith*, 875 S.W.2d 873, 879 (Ky. 1994). "Because an objective standard is appropriate for measuring whether a judge's impartiality might reasonably be questioned from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances, we hold, appropriately, that this determination is to be reviewed on appeal on a *de novo* basis." *Abbott, Inc. v. Guirguis*, 626 S.W.3d 475, 484 (Ky. 2021).

A party or counsel may seek to disqualify or recuse a judge from proceeding further in a matter either by filing an affidavit pursuant to KRS 26A.020, by filing a motion with the judge pursuant to KRS 26A.015, or by filing both. *Nichols v. Commonwealth*, 839 S.W.2d 263, 265 (Ky. 1992). In the case *sub judice*, Grandparents filed a motion for recusal with the judge himself.

The majority of Grandparents' allegations against the judge's impartiality arise simply from the trial court's rulings in favor of Parents. And the mere belief that a judge will not afford a fair and impartial trial is not sufficient grounds for recusal. *Bissell v. Baumgardner*, 236 S.W.3d 24 (Ky. App. 2007).

However, in support of their motion, Grandparents cite specifically to language in the court's February 20, 2024 order stating he was privy to *communications in various modes* wherein Grandparents attacked Parents. The court did not support this comment with citations to the record. Moreover, when this comment was questioned in Grandparents' motion to recuse, the trial court in its April 30, 2024 order failed to address it or point to communications in the record to which he was referring. A thorough review of the record by this Court produced only one such communication, attached as an exhibit to one of Tiara's motions for attorney's fees, written by Paris sent to Tiara's friends during the *de facto* custodian portion of this litigation.

We do not assume the trial court engaged in prohibited *ex parte* communications or accuse the court of improper behavior. However, Judicial Canon 1, Rule 1.2 reads: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety." In the case *sub judice*, the court affirmatively stated it was privy to *communications* – plural. When questioned regarding this statement, the court failed to address it. And, a review of the record produced only one communication that could arguably support the court's comment. There was a clear appearance of impropriety in the case at bar which was not resolved by the court when provided the opportunity. Accordingly, the judge's impartiality could be reasonably questioned thus necessitating his disqualification under Rule 2.11 of Canon 2 of the Code of Judicial Conduct. Based on our *de novo* review, the trial court erred in denying Grandparents' motion to recuse.

## ATTORNEY'S FEES

Grandparents argue there is no basis for the award of attorney's fees in litigation regarding the issue of grandparent visitation rights. In dissolution actions, KRS 403.220 governs the award of attorney's fees. "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or

-12-

defending any proceeding *under this chapter*[.]" KRS 403.220 (emphasis added).

However, Chapter 405 governs the issue of grandparent visitation rights,

specifically, KRS 405.021.

In *Seeger v. Lanham*, 542 S.W.3d 286 (Ky. 2018), the Supreme Court

addressed a similar question in regard to a paternity action. Paternity actions are

governed by statutes promulgated in KRS Chapter 406:

> At this juncture, we cannot hold that the purpose of
> KRS 403.220 applies to paternity actions. While it may
> seem perfunctory, we are constrained to the plain
> language of the statute, if that statute is clear. When
> examining the plain language of a statute, "[w]here there
> is no ambiguity in the statute, there is no need to resort to
> the rules of statutory construction in interpreting it. The
> words of the statute are simply accorded their commonly
> understood meaning." *Stewart v. Estate of James
> Cooper*, 102 S.W.3d 913, 915-16 (Ky. 2003) (quoting
> *Regional Jail Auth. v. Tackett*, 770 S.W.2d 225, 229 (Ky.
> 1989)). KRS 403.220 clearly states that a trial court may
> "order a party to pay a reasonable amount for the cost to
> the other party of maintaining or defending *any
> proceeding under this chapter* and for attorney's fees
> . . ." (emphasis added). We cannot ignore this clear
> language which triggers the trial court's discretion to
> award attorney's fees in cases proceeding under KRS
> Chapter 403.

*Id.* at 293.

Similarly, the right to grandparent visitation is encapsulated in KRS

Chapter 405, not KRS Chapter 403. Thus, KRS 403.220 has no application here.

As such, the trial court had no authority to grant an award of attorney's fees.

-13-

## **CONCLUSION**

In the case at bar, many mistakes were made. Ms. Russell, initially appointed FOC, went on to represent a parent in violation of her statutory mandate; the court failed to adequately address the concerns of Grandparents regarding *ex parte* communications; and the court inappropriately granted attorney's fees. On remand, Judge Gatewood shall recuse from the case as presiding judge and Ms. Russell shall also be disqualified from further participation in this litigation below or on appeal. Further, we vacate the court's orders regarding visitation and attorney's fees. The case is remanded back to the trial court for a new hearing regarding grandparent visitation rights.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

Dean H. Sutton
Louisville, Kentucky

BRIEF FOR APPELLEES:

John H. Helmers, Jr.
Melina Hettiaratchi
Louisville, Kentucky

Allison Spencer Russell
Louisville, Kentucky