RENDERED: NOVEMBER 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1262-MR

ALEXIUS ASKEW                                           APPELLANT


                  APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                 HONORABLE JOSEPH ROARK, JUDGE
                     ACTION NO. 20-CR-00503-002


COMMONWEALTH OF KENTUCKY                     APPELLEE


AND


NO. 2024-CA-1263-MR


ALEXIUS ASKEW                                           APPELLANT


                  APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                 HONORABLE JOSEPH ROARK, JUDGE
                     ACTION NO. 20-CR-00505-002


COMMONWEALTH OF KENTUCKY                     APPELLEE

AND

NO. 2024-CA-1264-MR


ALEXIUS ASKEW                                                              APPELLANT


                         APPEAL FROM MCCRACKEN CIRCUIT COURT
v.                         HONORABLE JOSEPH ROARK, JUDGE
                              ACTION NO. 22-CR-00671


COMMONWEALTH OF KENTUCKY                                                    APPELLEE



                                    OPINION
                                    AFFIRMING

                              ** ** ** ** **

BEFORE:  COMBS, A. JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Alexius Askew appeals from the McCracken Circuit

Court's decision to revoke her shock probation.  We affirm.

         In early 2023, Askew was sentenced to a total of seven-years'

imprisonment by the McCracken Circuit Court for the charges pending against her

in three cases.  In May 2023, the trial court granted Askew's motion for shock

probation.  Among other conditions, the order granting shock probation required

Askew to "[r]efrain from violating the law in any respect" and to "[h]ave continued

-2-

good behavior[.]"  The order also stated that if Askew "fails to comply with any of the condition[s] herein or commits any criminal violation, she shall be immediately reincarcerated for service of the remainder of the original sentence."

In March 2024, the Commonwealth filed a motion to revoke Askew's probation because she had been arrested for assault and criminal abuse.  Attached to the Commonwealth's motion was a report by the Department of Probation and Parole noting that Askew had been arrested twice before while on shock probation.  Despite the "zero-tolerance" language in the shock probation order, the probation officer had not sought to have Askew's probation revoked due to the first two arrests.

Meanwhile, Askew's counsel had sought to have her undergo a competency evaluation in a criminal case which arose from one of her arrests.  The trial court granted that motion in April 2024 and continued the revocation proceedings pending the outcome of the evaluation process.  In July 2024, the trial court issued an order finding Askew competent.  The next month, Askew's counsel asked the trial court to deny the motion to revoke because more than ninety days had elapsed since the filing of the revocation motion.  *See* Kentucky Revised Statutes ("KRS") 533.040(3) ("A sentence of probation or conditional discharge shall run concurrently with any federal or state jail, prison, or parole term for another offense to which the defendant is or becomes subject during the period,

-3-

unless the sentence of probation or conditional discharge is revoked. The revocation shall take place prior to parole under or expiration of the sentence of imprisonment or within ninety (90) days after the grounds for revocation come to the attention of the Department of Corrections, whichever occurs first.").

The trial court held a revocation hearing in late August 2024. Among the witnesses were Askew's probation officer and the police officer who had made the third arrest of Askew. The police officer testified that he had spoken to a person who claimed to have been assaulted by Askew and had also viewed videos showing Askew kicking a person lying on the ground in the face while participating in a melee.

The trial court later issued an order revoking Askew's shock probation and requiring her to serve the remainder of her seven-year sentence. The order noted that Askew had been arrested for a new offense and that her failure to comply with the terms of her supervision constituted a substantial risk to Askew's prior victims or the community at large and she could not be appropriately managed in the community. The order also stated that "[s]anctions other than revocation are not appropriate."

Askew then filed these three appeals, one for each criminal case in which her shock probation was revoked. We consolidated the appeals and resolve all three in this Opinion. "We have considered the parties' extensive arguments

and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

We review the decision to revoke probation under the deferential abuse of discretion standard. *Kendrick v. Commonwealth*, 664 S.W.3d 731, 734 (Ky. App. 2023). To constitute an abuse of discretion, a decision must be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* (internal quotation marks and citations omitted). A trial court does not abuse its discretion "unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law." *Id.* (internal quotation marks and citation omitted).

To revoke Askew's probation, KRS 439.3106(1)(a) required the trial court to make two basic findings. First, that Askew was a significant risk to prior victims or the community at large and, second, that she could not be appropriately managed in the community. The trial court made both of those findings.

Askew notes that the court did not elaborate on those findings. However, as we have held, "a court is only required to make the statutory findings, not explain them." *Kendrick*, 664 S.W.3d at 734. Thus, the terseness of the revocation order does not entitle Askew to relief.

Additionally, we categorically reject Askew's assertion that some unfortunately precise language in our opinion in *Helms v. Commonwealth*, 475 S.W.3d 637 (Ky. App. 2015), entitles her to relief. Askew's argument is based on "our often misconstrued statement" in *Helms* that "'perfunctorily reciting the statutory language in KRS 439.3106 is not enough'" to affirm an order revoking probation. *Kendrick*, 664 S.W.3d at 735 (quoting *Helms*, 475 S.W.3d at 645). We have rejected arguments functionally identical to those raised by Askew in at least two published opinions. *Kendrick*, 664 S.W.3d at 734; *New v. Commonwealth*, 598 S.W.3d 88, 90 (Ky. App. 2019). Our intent in *Helms* was to note that merely reciting the statutory factors is insufficient to revoke probation unless there is an evidentiary basis for doing so. "In other words, we cannot affirm the revocation of probation simply because the revocation order contains the requisite statutory findings." *Kendrick*, 664 S.W.3d at 735. The takeaway thus is that Askew is not entitled to relief simply because the trial court did not provide detailed explanations underlying the requisite statutory findings.

Next, it is beyond reasonable dispute that there was sufficient evidence to revoke probation. Askew was charged with new criminal offenses while on shock probation. The arresting officer's testimony plainly indicated Askew had engaged in improper conduct. At minimum, her violent participation in the melee was not the "continued good behavior" required by the shock

probation order. Askew's inappropriate conduct while on shock probation supports the trial court's findings that she had violated the terms of her shock probation, posed a significant risk to the community, and could not be appropriately managed in the community. "In sum, this is not an instance where the trial court mechanically made findings unsupported by the record." *Kendrick*, 664 S.W.3d at 735. We generally have concluded that a trial court does not abuse its discretion by deciding to revoke probation "if there is evidence to support at least one probation violation." *Brann v. Commonwealth*, 469 S.W.3d 429, 431 (Ky. App. 2015) (internal quotation marks and citation omitted). Because there was evidence to support at least one probation violation here, the trial court did not abuse its discretion.

Askew seems to argue the trial court should not have considered the first two times she was arrested while on shock probation because the Commonwealth did not seek to revoke her probation due to those arrests. Askew cites no authority holding that a court must completely ignore prior arrests for which revocation was not sought when deciding whether to revoke probation based on a subsequent arrest. Instead, a trial court generally should be permitted to consider all relevant facts and circumstances when deciding whether to revoke probation. Nonetheless, we need not definitively resolve Askew's argument under these unique facts. The trial court here did not mention the first two arrests in the

order revoking probation. Moreover, by itself, the third arrest, and the conduct underlying that arrest (as described by the arresting officer at the revocation hearing), provides a sufficient evidentiary basis for the court's decision to revoke Askew's shock probation.

Askew does not assert that she did not engage in criminal conduct while on shock probation (*i.e.*, that she was actually innocent). Indeed, even laying aside her first two arrests, a search of McCracken District Court Case No. 24-M-00475 on CourtNet, our state's electronic case management system, shows that Askew eventually was found guilty of two misdemeanor charges stemming from the third arrest—the one which caused the Commonwealth to file a motion to revoke her shock probation. We reject Askew's argument that it was improper for the Commonwealth to cite to CourtNet, or that we may not do so. Although a court may not take judicial notice of CourtNet records at trial, *see Marchese v. Aebersold*, 530 S.W.3d 441, 447 (Ky. 2017), we may use CourtNet for the limited purpose of ascertaining basic information about relevant trial court proceedings. *See, e.g.*, *Mulazim v. Commonwealth*, 600 S.W.3d 183, 203 n.6 (Ky. 2020) ("While the jury acquitted Canada of murder and was hung on Mulazim's murder charge, according to CourtNet, Mulazim was subsequently convicted of Jonathan Price's murder and sentenced to life imprisonment without the possibility of parole."); *White v. Fowler*, 717 S.W.3d 176, 181 n.5 (Ky. App. 2025) ("Judicial notice may

not be taken of CourtNet records to be presented as evidence in trial. But information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings.") (citations omitted); *Barnette v. Evans*, 697 S.W.3d 749, 753 n.2 (Ky. App. 2024) ("Judicial notice may not be taken of Kentucky CourtNet records to present as evidence in a trial. But information about the existence of charges may be referenced by an appellate court to provide perspective for the trial court proceedings.") (citations omitted). Although a party should be careful when using CourtNet in a brief, we perceive no error in the Commonwealth's usage of CourtNet under these facts.

Also, the fact that Askew's probation was not immediately revoked after her first arrest belies her argument that she was harmed by the "zero-tolerance" language in the shock probation order. The challenged language could be construed to be a commitment by the trial court to revoke Askew's probation for even a slight violation without having first considered imposing lesser sanctions. We expressed our disapproval of similar "zero-tolerance" provisions in pretrial diversion agreements. *Helms*, 475 S.W.3d at 644 ("Likewise, a zero-tolerance provision cannot shed a trial court of its statutory duty to consider the criteria of KRS 439.3106 . . . . [so] a judge's commitment to a predetermined outcome upon a violation of a condition of diversion without consideration of KRS

439.3106 is an abuse of discretion."). We similarly disapprove of the zero-tolerance provision in a shock probation order.

However, under these facts, the zero-tolerance language is—at most—a harmless error. Askew's probation was not revoked after she was twice arrested. Obviously, therefore, the zero-tolerance provision was not enforced. Moreover, the revocation order stemming from her third arrest did not cite the zero-tolerance provision or her first two arrests. Instead, the order indicates the court considered, but ultimately rejected, imposing lesser sanctions. In other words, the zero-tolerance provision was not reflexively enforced and so its unfortunate inclusion in the probation order did not cause Askew to suffer demonstrable, concrete prejudice. *See* Kentucky Rule of Criminal Procedure ("RCr") 9.24 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.").

We next reject Askew's related argument that the trial court was somehow required to impose a lesser sanction. The trial court was required to consider imposing graduated sanctions; the trial court was not required to impose a lesser sanction. *See, e.g., Hall v. Commonwealth*, 566 S.W.3d 578, 581 (Ky. App. 2018); *McClure v. Commonwealth*, 457 S.W.3d 728, 732 (Ky. App. 2015). The order at issue states that lesser sanctions would not be appropriate. That is sufficient.

-10-

We also reject Askew's argument that revocation was improper because she was not afforded mental health treatment while on probation. We accept that mental health treatment could potentially have positively impacted Askew. However, the question before us is whether such treatment was required to be afforded to Askew, not whether that treatment would have been ideal. Askew cites no binding authority which required the trial court to order she be furnished with mental health treatment while on shock probation. Thus, the propriety of the revocation decision is not impacted by the fact that Askew did not receive taxpayer-funded mental health treatment while on shock probation.

We now turn to Askew's hazy argument that the sentence imposed by the revocation order is improper. As we construe Askew's briefs, she contends the order is erroneous because it does not specify that the sentences for which her probation was revoked must run concurrently with the sentence for the offenses which provided the basis for revocation. We note initially that Askew has wisely abandoned on appeal her argument that her probation could not be revoked at all since more than ninety days had elapsed from the time the basis for revocation was known to the Commonwealth. Our Supreme Court has rejected that argument. *See Sutherland v. Commonwealth*, 910 S.W.2d 235, 236-37 (Ky. 1995).

Instead, Askew argues that we must provide her relief because "[h]er eventual sentences for the new criminal charges on the violation report ***may***

-11-

therefore be running consecutively to her 7-year sentence when they should not be." (Emphasis added.) We agree with Askew that KRS 533.040(3) requires the sentences for the charges for which her probation was revoked to run concurrently with the sentence for the charges which gave rise to the revocation proceedings since the revocation did not occur within ninety days after the grounds for it came to the attention of the Department of Corrections. *Sutherland*, 910 S.W.2d at 237 ("The statute provides that any revocation of probation (which occurs outside of the 90-day period) is to be run concurrently with any other offense."). *See also Kiser v. Commonwealth*, 829 S.W.2d 432, 435 (Ky. App. 1992). Our conclusion is not impacted by the fact that the delay in the final revocation hearing was due, at least in part, to the then-pending competency assessment. *Sutherland*, 910 S.W.2d at 237 ("If this [90-day] time frame is deemed to be too short, it is up to the General Assembly to make a change."). However, Askew is not entitled to relief for two main reasons.

First, Askew's argument is speculative. She does not assert that her sentences are *actually* running consecutively. Instead, she only vaguely asserts that the sentences *may* be running consecutively. We resolve only concrete, active and ongoing legal questions; we decline to provide advisory opinions on purely theoretical issues. *See, e.g.*, *City of Pikeville v. Kentucky Concealed Carry*

*Coalition, Inc.*, 671 S.W.3d 258, 263 (Ky. 2023); *Commonwealth, Kentucky Bd. of Nursing v. Sullivan University System, Inc.*, 433 S.W.3d 341, 344 (Ky. 2014).

Second, Askew has not challenged the Commonwealth's assertion that her sentences are actually being served concurrently. Askew instead chastises the Commonwealth for citing to CourtNet to buttress that assertion. We have already explained that the Commonwealth did not err by citing CourtNet to show basic facts about relevant trial court proceedings. Moreover, the sentences for the felony charges for which Askew's shock probation was revoked generally must be served concurrently with the misdemeanor sentences for the offenses she committed while on shock probation. *See* KRS 532.110(1)(a) ("When multiple sentences of imprisonment are imposed on a defendant for more than one (1) crime, including a crime for which a previous sentence of probation or conditional discharge has been revoked, the multiple sentences shall run concurrently or consecutively as the court shall determine at the time of sentence, except that: (a) A definite and an indeterminate term shall run concurrently and both sentences shall be satisfied by service of the indeterminate term[.]").

We perceive no need to address this hypothetical issue further. If Askew's sentences have truly somehow been ordered to be served in a manner contrary to KRS 533.040(3), she may seek appropriate relief in the trial court.

-13-

For the foregoing reasons, the McCracken Circuit Court's decision to revoke the shock probation of Alexius Askew is affirmed.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Aaron Reed Baker
Assistant Public Advocate
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky